ANDREW DEFENBAUGH

*v.*

ROBERT M. WEAVER.

1. SALE—*waiver by acceptance.* Although a contract may be for the sale of a specific number of cattle, and embrace a warranty that they shall average so much per head, and an agreement on the part of the vendor to keep them from food and water for twelve hours before weighing, yet if the purchaser, with a knowledge of the facts, accepts a less number of cattle, not averaging the specified weight, and ships them, he will be considered as having waived a strict compliance with the contract, and will be liable to pay the contract price for as many cattle as he gets.

2. PLEADING AND EVIDENCE—*recovery for part.* A party suing for the price of cattle sold and delivered and for hogs sold and refused to be taken, is not precluded from recovering at all if he fails to show a sale of the hogs. Under a proper state of pleading he may recover for the cattle sold and delivered.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. HAGAR & FLANDERS, for the appellant.

Messrs. BARNES & MUIR, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

The controversy in this proceeding relates to a contract made between appellant and appellee in the early part of February, 1871, and to transactions of the parties growing out of or done under the contract.

Appellant's version of this matter is, substantially, that he (having at that time a lot of cattle which he was feeding for the market, on his farm, and also a lot of hogs in the same inclosure, which he was also feeding for market,) agreed to sell both cattle and hogs to appellee, to be taken and delivered at any time between April 15th and May 1st of that year, at the option of appellee as to the day of delivery, and that appellee agreed to buy and accept both the cattle and hogs, at the price of $7 per hundred pounds for both cattle and hogs;

that about the 28th of April of that year he delivered to appellee the cattle in question, and that the same were received and accepted by him.   Appellant also claims that the contract, after its making, was modified, by agreement, as to the number of hogs to be furnished, and that he offered the hogs in apt time and in compliance with the contract, as modified, and that appellee refused to receive and accept the same, and that appellant was compelled to sell the hogs at a price much less than the contract price.   He concedes that he has received from appellee, as an advance upon the contract, $1004, and from the proceeds of the cattle, paid to him by the appellee through his commission merchant, $10,173.58—in all $11,-177.58.   He insists that the price of the cattle delivered was $11,862.12, and that the amount received was less than the price of the cattle delivered by $684.54, and claims some $1200 to $1400 as damages, as loss upon the hogs, thus claiming that there is due to him from appellee some $1884.54 to $2084.54, growing out of this transaction.

The substance of appellee's version of the matter is, that by the original contract he agreed only to buy the cattle; that he never made any contract to buy the hogs, and that it was a part of the contract that the cattle were warranted by appellant to weigh, on an average, at least 1550 pounds, and that appellant would produce for weighing at the scales cattle which had had no feed or water for twelve hours next before weighing, and in that condition would average at least that much; and that when the cattle were weighed they had not been kept entirely from feed and water for the twelve hours next preceding, and that they did not average over 1448 pounds, and for these reasons he refused to accept them, as he lawfully might, and that he did not receive them but rescinded the contract, and claims to recover the money he had advanced upon the contract, which he claims was $1204.

This action was brought by appellee for the recovery of the money thus advanced by him upon the cattle contract, as he

claims, to appellant. The declaration contains the common counts.

Defendant pleaded first, *non assumpsit*. The second plea is that of set-off, alleging generally an indebtedness of plaintiff to him (as is usual in common counts) in the sum of $4000, "for divers cattle sold and delivered by defendant to plaintiff, and at his request, and in the sum of $4000 for divers hogs, etc., and in same amount for live stock, and in like amount for corn, oats and hay, and in a like amount for goods, wares and merchandise sold and delivered, etc., and for money had and received, etc." Defendant added several special pleas, in each of which, in different forms and with some modifications, he sets up a special contract for the sale of a certain number of fat cattle and a certain number of fat hogs by him to plaintiff, at a given price per pound, alleging the delivery and acceptance of the cattle, and an offer to perform that part of the bargain about hogs, and a wrongful refusal on the part of plaintiff to accept the hogs, and offering to set off his damages.

The action was brought in the circuit court of Marshall county to the January term, 1872. A trial was had at that term, and a verdict rendered for defendant, and assessing his damages at $192.82. The defendant moved for a new trial, and the plaintiff resisted the motion. The verdict was set aside. Another trial was had at the January term, 1874, and a verdict rendered for defendant for $1638. This verdict was set aside on motion of the plaintiff, and a change of venue was ordered to the circuit court of Will county. In that court the issues were again tried by a jury, at the January term, 1875, and a verdict rendered for the plaintiff for $646.22. Defendant moved for a new trial, which was refused, and judgment was rendered for plaintiff upon the verdict, and from that judgment this appeal is prosecuted.

The circuit court charged the jury, among other things, that "under the issues in this case the defendant was required to prove, not only the sale of both hogs and cattle, but also the delivery or tender of delivery of both hogs and cattle of

the number and description, and at the time or times stated in his pleas; and if defendant has failed in making such proof, he is not entitled to recover from plaintiff, but plaintiff, on the other hand, is entitled to and should recover from defendant whatever sum or sums of money he paid, if any, to defendant upon the cattle, or any supposed contract relating to the sale of the cattle."

Under the pleadings, this instruction was clearly erroneous, and well calculated to mislead the jury.

There was proof in the case tending to show that the contract, when made, was for 120 head of cattle, to average not less than 1550 pounds weight, after being kept off feed and water the twelve next preceding hours, and that the contract did not embrace the hogs at all. It was proved by plaintiff's own testimony, and by other evidence which was not in any way contradicted, that about the 28th of May, 1871, plaintiff went to defendant's farm, where this lot of cattle were, and during the night preceding the weighing of the cattle, he and defendant had charge of the cattle in guarding them from the water in the inclosure, and that in spite of their care some of the cattle did get water, and this with plaintiff's knowledge; that there was hay which they fed upon, and that he, making no objection on that account, went along in the morning, as the cattle were driven to the scales; that though there were but 117 head of the cattle, he suffered them to be weighed under his inspection, and although they weighed on an average not more than 1448 pounds, plaintiff went with the cattle to the nearest railroad station, telegraphed for cars to transport them to Chicago, and under his direction had the shipping bills made out by the railroad agent as of cattle shipped by him to a commission merchant in Chicago, and afterwards, at the request of defendant, had the bills changed so as to ship them to defendant; that he went with the cattle to Chicago, and there was present when the cattle were put in the charge of a commission merchant to be sold; and the only allegation that he swears to, indicating in any way an intention on his

part to rescind the contract on account of these points of non-conformity to the contract, found in his testimony, is, that when the average weights were ascertained at the weighing of the cattle, he then said to the defendant, "the cattle don't fill the bill." This was before the cars were telegraphed for, and before the shipping bills were made out. Though he had paid on the contract advances to over $1000, he said nothing at the place of weighing, nothing at the railroad station, and nothing in Chicago to defendant, about wanting his advances refunded. In this connection, it may be proper to notice that plaintiff swears he and defendant had a little wager about the weight of the cattle, defendant betting that the cattle would average 1600 pounds, and plaintiff that they would not. The remark that "the cattle did not fill the bill," if made at all, may have had reference to that bet.

Defendant swears that the remark was not made, and that plaintiff, at Chicago, took the control of the disposition of the cattle; that at his request plaintiff directed the commission merchant to pay the proceeds of the sale, when received, to defendant, as plaintiff had not yet paid defendant for the cattle. The commission merchant corroborates defendant in this statement, and further testifies, that during the day, at the stock yards, he had an offer for the cattle, which he advised plaintiff to accept, but plaintiff forbade him selling the cattle unless he could get a higher price, which he named. It is also in proof, that after the sales were made, an account of sales was sent to plaintiff, with statement that proceeds had been sent to defendant.

Take the proof all into consideration, and it seems very convincing that if there was a warranty as to what the cattle would weigh, and if a perfect exclusion of the cattle from food and water for twelve hours before weighing, and if the contract was specific for 120 head of cattle, still, all these matters were waived by plaintiff, and he did accept the 117 head of cattle at the agreed price of $7 per hundred, and did receive them and put them in the hands of a commission merchant to

sell on his account, with directions to pay the proceeds to defendant—at least there can be no doubt that the evidence tended to prove that state of affairs. If this statement was true, defendant was entitled to recover, under his second plea, of plaintiff the unpaid part of the purchase money for the cattle, at $7 per hundred, and this although the contract did not embrace the sale of the hogs.

For this error alone, the judgment must be reversed.

There are other instructions which are faulty. Those in relation to the supposed warranty that the cattle should average 1550 pounds, are not well expressed, and were calculated to mislead the jury, and should all have been qualified by calling attention to the apparent waiver of the same by the subsequent acts of plaintiff. Those as to the effect of the agreement that the cattle should be kept from food and water for twelve hours next before weighing, should, if given, have been accompanied by a statement, that if plaintiff, with a knowledge that this had not been strictly done, had consented to the weighing, such act would be a waiver of this objection, in so far as it could operate as a condition precedent to the sale.

Whether the contract did or did not embrace the sale of the hogs, is a question on which we express no opinion. The evidence is very contradictory on that point, and, as the proof appears in this record, we could not disturb a verdict on that question, one way or the other.

The judgment is reversed and the cause remanded for another trial.

*Judgment reversed.*